ORIGINAL

*Stephen Danforth*

RECEIVED
BY MAIL
DEC 20 2004
CLERK, US DIST. COURT
ST. PAUL, MN

December 16, 2004

Hon. John R. Tunheim, District Judge
United States District Court
700 Federal Building
316 N. Robert Street
St. Paul, MN 55101-1460

RE: *United States ex rel. Stephen Danforth v. David Crist et al*, No. 01-2137 (JRT/RLE): Petitioner's status update as to state appeal regarding *Crawford* and *Blakely*

Dear District Judge Tunheim:

This letter pertains to my pending motions for reconsideration and to amend the Petition herein.

First, this is to update the District Court of the advanced status of my ongoing effort to exhaust state remedies as to my proposed additional claims in my motion to amend. Those two additional claims, respectively, are based upon the confrontation violation under *Crawford v. Washington*, ___ U.S. ___, 124 S.Ct. 1354 (2004), and upon the right to jury determination of upward-departure sentencing under *Blakely v. Washington*, ___ U.S. ___, 124 S.Ct. 2531 (2004).

I advanced the *Crawford v. Washington* claim by way of postconviction relief petition, and the *Blakely v. Washington* claim by way of motion to correct sentence, both in the trial court. That court, per Judge Marilyn Rosenbaum, jointly denied both that postconviction relief petition and that motion. I promptly appealed to the Minnesota Court of Appeals. That appeal remains pending as of this writing. In connection with my motion for *in forma pauperis* status as to that appeal, Judge Rosenbaum found that appeal not to be frivolous.

Indeed, both claims possess merit as to both their substance and their applicability to this case. In addition to the argument already advanced in the motions herein for reconsideration and to amend, the following subsequently discovered authorities support such merits.

*State v. Courtney*, 682 N.W.2d 185 (Minn. App. 2004), supports the <u>substantive</u> applicability of *Crawford v. Washington* in this case. In *State v. Courtney*, the defendant was charged with assault and terroristic threats stemming from a domestic incident.

SCANNED
DEC 20 2004
U.S. DISTRICT COURT ST. PAUL

During the investigation, police arranged for a child protection worker to interview the alleged victim's daughter, who was present at the time of the alleged assault. *Id*, pp. 189-90. Over defense objection, the videotape of that interview was admitted into evidence and played before the jury. *Id*, p. 191. On appeal, the Court of Appeals held that the child's videotaped statement was testimonial because the statement was made in preparation for the case against the defendant. *Id*, p. 196. Using the *Crawford* rule, the Court of Appeals in *Courtney* ordered a new trial for the defendant and prohibited the state from introducing the child's statements unless she were available for cross-examination.

Likewise herein, the CornerHouse interview of complainant was conducted with the intent that the resulting videotape would be available for use as prosecution evidence against defendant at his trial herein. Admitted facts of record in defendant's trial reveal that:

(a) CornerHouse produces literally hundreds of such videotapes each year, all with that intent, and every interview conducted at CornerHouse is videotaped.

(b) Although nominally a non-profit agency, CornerHouse works exclusively with police and the Hennepin County Attorney's Office to conduct such interviews, taking advice, suggestions, and even real-time requests during each such interview from police and a prosecutor 'stationed' at CornerHouse as to questions to ask and interrogation tactics to use.

(c) The CornerHouse interviewer in this case, Debra Martinetti, admitted that she had appeared in Court at prosecution behest over one hundred times in just the year before complainant's interview, all in support of admission of such videotapes as evidence.

(d) In each interview, Martinetti was aware that her interviews would be, or could be used as such evidence, and conducted such interviews with an eye to effecting such evidentiary use.

All of these facts support the inescapable conclusion that it would be reasonable at the time of that interview to believe that complainant's statements in response to Martinetti's questioning in that videotaped interview "would be available for use at a later trial", as specified by *Crawford v. Washington*, at 124 S.Ct. 1364. Therefore, *Crawford* substantively applies to admission of the CornerHouse interview videotape in this case.

Moreover, in additional support for <u>retroactive</u> application of the *Crawford v. Washington* herein, *Horton v. Allen*, 370 F.3d 75, 83 (1st Cir. 2004), a habeas corpus case, declares that *Crawford* "<u>changed the legal landscape</u> for determining whether the admission of certain hearsay statements violates the accused's right to confront witnesses." Such a complete

'landscape change' demonstrates the 'watershed' impact necessary for retroactive application under *Teague v. Lane*, 489 U.S. 288, 103 L.Ed.2d 334, 109 S.Ct. 1060 (1989).

*Horton v. Allen* is also notable in separately interpreting *Crawford* as abrogating *Ohio v. Roberts* only as to cases meeting the *Crawford* criterion of "testimonial statements." Finding the <u>private-conversation</u> hearsay statements in <u>that</u> case not to have been made in "circumstances in which an objective person would 'reasonably believe that the statement would be available for use at a later trial.'" (*Horton*, at 370 F.3d 84, quoting *Crawford*, at 124 S.Ct. 1364), *Horton* proceeded to apply the standards developed under *Ohio v. Roberts*, to determine whether those private-conversation statements violated Horton's Confrontation Clause rights.

In this case, Petitioner contends that the respective out-of-court statements of complainant, and of the two non-witnesses 'other-crime' victims are governed by *Crawford*. However, to whatever extent the above *Crawford* standard of 'objectively reasonable expectation' of trial-use availability may not be deemed to have been met as to any of complainant's alleged statements, each such 'non-*Crawford*' statement must still satisfy the *Roberts*-based specific standard in *Idaho v. Wright*.

Substantively, as to the applicability of *Blakely* to sentencing under the Minnesota Sentencing Guidelines, *State v. Conger*, 687 N.W.2d 639 (Minn. App. 2004), rejected (at 687 N.W.2d 643-44) a prosecution claim of a distinction between Washington state sentencing guidelines and those in Minnesota. The prosecution had claimed that Minnesota's sentencing guidelines are not mandatory, but merely advisory to the district court. However, *Conger* held that trial courts <u>must</u> follow the procedures of the guidelines, per *Minnesota Statutes*, Section 244.09, subdivision 5, and hence that findings for departure <u>must be made</u>, per *Minn. Stat.*, Sec. 244.10, subd. 2. So *Blakely* does govern Minnesota sentencing.

As to *Blakely*'s retroactivity, in a manner parallel to *Horton*, observations in *United States v. Pirani*, No. 03-2871, 2004 *U.S. App. LEXIS* 17012 (8th Cir. Aug. 16, 2004), support Petitioner's argument for retroactive application of *Blakely v. Washington*, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), herein. *Pirani*, at *8, calls *Blakely* a "<u>landmark case</u>", and at * 21 declares that *Blakely* "has brought a <u>sea change</u> in our understanding of the constitutionality of determinate sentencing systems...." These descriptors establish that <u>*Blakely* possesses "watershed" significance</u>, for purpose of *Teague v. Lane* examination of retroactivity as to *Blakely*. Simply put, because *Blakely* is such a "landmark", and carries such an inherent "sea change" of understanding of the right to jury trial of sentencing, it is in fact the "watershed" required for retroactivity.

Quite distinctly, an aspect of Minnesota state procedural law as to criminal sentence finality bypasses altogether any need for retroactive application of *Blakely* herein. This matter comprises part of Petitioner's current state-court appeal. Minnesota's system of sentence correction deprives Minnesota state criminal sentences of the finality required under *Teague v. Lane* before application of new authority can be said to be "retroactive" at all. *Minnesota Rules of Criminal Procedure*, Rule 27.03, subd. 9, allows a sentence to be directly challenged within the same criminal case "at any time", rather than requiring such challenge to be brought in a collateral, independent post-conviction relief action. Accord: *McCarr, Minnesota Practice*, Criminal Law and Procedure, Section 36.22. Because a "conviction" under Minnesota law is complete only at the "judgment", which must include the sentence (*Rules of Criminal Procedure*, Rule 28.02, subd. 2), an illegal sentence makes the judgment of conviction itself a nullity, and hence non-final for *Teague v. Lane* purposes (489 U.S. at 301). In effect, in this way Minnesota has provided for correction of sentences that are revealed at any time to be illegal, such as under *Blakely*. Therefore, no retroactive application of *Blakely* is actually involved herein at all.

An analogous outcome illustrating this point in a habeas corpus context was reached in *Cockerham v. Cain*, 283 F.3d 657, 661-62 (5th Cir. 2002). *Cockerham* involved an appeal after an unsuccessful direct appeal. Cockerham petitioned for permission to file a late appeal under a procedural rule allowing such subsequent appeals in criminal cases by permission. Because of the existence of that rule, application of the new point of law (in *Cockerham*, *Cage v. Louisiana*, decided after Cockerham's direct appeal) was held not to require retroactive application of that new rule, but rather only its current application. *Cage* was applied in *Cockerham* because Cockerham's criminal case could not be regarded as final "until resolution of the out-of-time appeal." *Id*, p. 661. Analogously in Minnesota, Rule 27.03, subd. 9, deprives an illegal sentence of finality. Because *Blakely* now reveals Petitioner's sentence to be illegal, that sentence has no finality under that rule allowing correction "at any time."

Last as to *Blakely* developments, but certainly not least, the United States Supreme Court has already heard consolidated argument in *United States v. Booker*, No. 04-104, and *United States v. Fanfan*, No. 04-105. *Booker* and *Fanfan* address the substantive question of whether the federal sentencing guidelines regime survives *Blakely*. That question is of important threshold significance in this case, since Minnesota and federal guidelines systems are so nearly identical. Moreover, it appears that determination of that question of impact of *Blakely* so profound as to collapse the entire federal guidelines regime inherently must, in passing, offer pronouncement, or at least authoritative insight as to the 'watershed' nature of the conceptual sea-change revealed by *Blakely*.

For instance, Acting Solicitor General Paul D. Clement, at combined argument in *Booker/Fanfan* on October 4, 2004, "warned that in 2002 alone, 65 percent of federal sentences involved an upward departure based on a judge-found fact, and he maintained that applying *Blakely* to the U.S. Sentencing Guidelines would render these sentences constitutionally 'dubious'." (*Criminal Law Reporter* [BNA, Washington, DC], Vol. 76, No. 1 (Oct. 6, 2004), at p. 2021), thus implicitly acknowledging that such enormous impact could require retroactive application of *Blakely*. Clement also argued that, assuming *Blakely* is to be applied to the federal guidelines, a system of jury findings on all facts supporting upward departures would be too complicated to work well. (*Id*, p. 2023), thus further illustrating the complete sentencing procedure change emerging from *Blakely*. Last, it further illustrates the profound impact of *Blakely* that the Supreme Court granted "the government's request to expedite review in [*Booker* and *Fanfan*] and did take the unusual step of scheduling a rare two-hour argument on the justices' first day of the new term." (*Ibid*).

Separately, I also ask the Court to take notice of the following subsequently discovered case supporting numerous claims herein against an incorrect, unreasonable determination by the Report and Recommendation herein as to purported state-court findings.

Under *Shafer v. Bowersox*, 329 F.3d 637, 540 (8th Cir. 2003), the misstatements, and/or inaccurate or skewed references to trial court findings made in this case by the Minnesota Court of Appeals (unable to make findings of its own; see: *State v. Hince*, 540 N.W.2d 820, 823 (Minn. 1995)) are not entitled to any "presumption of correctness" under the *AEDPA*. The *Report and Recommendation* in this case is almost exclusively based upon those appellate misstatements concerning both non-existent, and different, actual trial court findings. Hence, the holding of *Shafer* dramatically reveals the error in such reliance, in turn rendering wholesale adoption of the *Report and Recommendation* herein factually incorrect and erroneous. Petitioner's *Objection* to that *Report and Recommendation* has identified certain salient instances of such false assertions by the Minnesota Court of Appeals as to purported 'findings' (in turn adopted from false assertions originating in prosecution appellate briefs). Additional instances of such false assertions appear throughout Petitioner's *Incremental Briefs* herein. Therefore, Petitioner continues to steadfastly insist that reconsideration is required to countermand reliance on such false assertions of findings, and to make correct determinations based on the true state of trial court findings, and the lack thereof, respectively, as to the Petition's claims.

In sum, in light of the current pendency both of (a) the Supreme Court's deliberation of *United States v. Booker*, and *United States v. Fanfan*, with opinion(s) anticipated to convey profound significance to the outcome herein as to the proposed additional claim based on *Blakely*; and (b) the state-court appellate status of proposed *Blakely* and *Crawford* claims herein, this is to request the District Court to postpone ruling on the pending motions to reconsider, and to amend, until issuance of opinion(s) in *Booker* and *Fanfan*, and until disposition of that pending joint *Crawford* and *Blakely* state-court appeal in my case.

Thank you for your attention to this matter, and for your consideration of this request..

Sincerely,

Stephen Danforth, J.D.

cc: Hennepin County Attorney Amy Klobuchar
Asst. Attorney General Thomas Ragatz

*Stephen Danforth*

December 16, 2004

RECEIVED
BY MAIL

DEC 20 2004

CLERK, US DIST. COURT
ST. PAUL, MN

Mr. Francis E. Dosal, Clerk of Court
United States District Court
700 Federal Building
316 N. Robert Street
St. Paul, MN 55101

RE: *United States ex rel. Stephen Danforth v. David Crist et al,* No. 01-2137 (JRT/RLE): Petitioner's letter to District Judge Tunheim (filing, with proof of service)

Dear Mr. Dosal: - one to ECF to view two extras NB

I enclose four originals of Petitioner's letter to District Judge John R. Tunheim dated December 10, 2004, together with a Declaration of Service as to same.

Please file this letter, and bring it to Judge Tunheim's attention.

Thank you.

Sincerely,

Steve Danforth

Stephen Danforth, J.D.

encl.

*970 Pickett St., N. – 147636* *Bayport, MN 55003-1490*

NOTICE: Mailed from a MN CORRECTIONAL FACILITY
Name: Stephen Danforth
OID#: 
Address: 970 PICKETT ST., N. - 147636
City/State/Zip: BAYPORT, MN 55003-1490

MINNESOTA CORRECTIONAL FACILITY-STILLWATER

DEC 17'04 MN
PB METER 7145816
$1.52 U.S. POSTAGE

1.52

# FIRST CLASS MAIL

Legal Mail

RECEIVED BY MAIL
DEC 20 2004
CLERK, US DIST. COURT
ST. PAUL, MN

Mr. Francis E. Dosal, Clerk of Court
United States District Court
700 Federal Bldg.
316 N. Robert St.
St. Paul, MN 55101