UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 01-2137

---

Stephen Danforth,

Petitioner,

vs.

STATE'S MEMORANDUM

David Crist, Warden of MCF-Stillwater and the Department of Corrections of the State of Minnesota,

Respondent.

---

TO: THE HONORABLE JOHN R. TUNHEIM, UNITED STATES JUDGE.

## PROCEDURAL HISTORY

On March 6, 1996, following a lengthy trial by jury, Petitioner was convicted of First Degree Criminal Sexual Conduct. On May 13, 1996, he was sentenced by the Honorable Richard B. Solum. Pursuant to Petitioner's appeal, the Minnesota Court of Appeals affirmed in part, reversed in part, and remanded for re-sentencing. Appellant was re-sentenced by the Honorable Daniel H. Mabley on August 4, 1998. On May 10, 1999, the Minnesota Court of Appeals affirmed the District Court and, on July 30, 1999, the Minnesota Supreme Court denied review.

Petitioner, Stephen Danforth, now moves this Court for reconsideration of his petition for writ of habeas corpus, arguing that, under the rule articulated in

Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004), his rights to confrontation and cross examination were violated when, during his sexual assault trial, the videotaped interview of the non-testifying child victim was played for the jury. Petitioner alternatively argues that, even if Crawford did not announce a new rule of law, it holds the status of a "watershed" rule under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989).

## STATEMENT OF FACTS

The Minnesota Court of Appeals summarized the facts of this case as follows:

> Danforth is a multiply-convicted pedophile with an extensive history of sexually abusing young boys during the 1970's and 1980's. Danforth and J.S.' parents, particularly J.S.' father, were close friends for many years; Danforth was like a "favorite uncle" to J.S. and his siblings, having spent a great deal of time with the family.
>
> On August 11, 1995, a neighbor discovered six-year-old J.S. with his pants down atop a younger girl, acting in a sexual manner. When confronted by his mother and asked where he had learned such things, J.S. said that "Steve" had put his mouth on J.S.' "pee-pee" and his finger in J.S.' "poopie butt." That evening, J.S.' mother called the police to report the alleged sexual abuse.
>
> When interviewed by the police, J.S. said that "Steve" had put his "pee" in his buttocks and that "Steve" had made him "kiss his pee." On August 23, 1995, J.S. was interviewed at CornerHouse, a non-profit sexual abuse center. J.S. gave substantially similar information during this

videotaped interview and clearly indicated that he had been sexually abused by Danforth.

The trial was lengthy, lasting from February 7 through March 6, 1996. Danforth, a disbarred attorney, represented himself for much of the trial, although he had access to stand-by counsel.

On the day that testimony was scheduled to begin, a competency hearing was held to determine whether J.S. and his five-year-old sister, A.S., were competent to testify. Danforth strongly urged the district court to find J.S. incompetent and to rule the CornerHouse videotape inadmissible. The state agreed that J.S. appeared incompetent to testify, but argued that the videotape was nevertheless admissible. Because J.S. had limited ability to focus on questions and give relevant answers, the district court declared him incompetent. The district court found A.S. competent to testify, however, because she exhibited a far superior ability to concentrate than J.S.

The district court admitted the videotape because it found that the taped conversations bore sufficient indicia of reliability. Among other factors, the district court noted that J.S.' remarks appeared spontaneous and largely unsolicited by leading questions, and that J.S. lacked any apparent motivation to fabricate the accusation.

At trial, the jury viewed the CornerHouse videotape, and A.S. testified that she had seen "Steve" put his mouth on J.S.' "pee-pee" and "private" one day in the men's room by the pool at their aunt's apartment. A.S. did not identify Danforth in the courtroom, however. The state called former victims to testify about the sexual abuse underlying some of Danforth's previous convictions.

> Danforth testified on his own behalf. He claimed that J.S.' parents trumped up the charges because J.S.' father was repulsed by Danforth's admitted homosexuality and J.S.' mother was angry with Danforth for various disparaging comments and criticism of her parenting skills. Danforth also claimed that he was reformed and understood the evil of his past ways.
>
> The jury convicted Danforth of first-degree criminal sexual conduct. The district court denied Danforth's detailed motion for a new trial and sentenced him to an executed term of imprisonment of 216 months, an upward durational departure of 58 months, but less than double the presumptive sentence, which the state asserted was the minimum sentence required under Minn. Stat. § 609.1352 (the patterned sex offender statute).

*State v. Danforth,* 573 N.W.2d 369 (Minn. Ct. App. 1997), *review denied* (Minn. Feb. 19, 1998).

## ARGUMENT

### I. APPELLANT IS NOT ENTITLED TO RETROACTIVE APPLICATION OF CRAWFORD V. WASHINGTON

When a decision of the United States Supreme Court establishes a new rule of constitutional law, it applies to all cases still pending on direct review. Griffith v. Kentucky, 479 U.S. 314, 328 (1987). A defendant's conviction becomes final when "a judgment of conviction has been rendered, the availability of the appeal exhausted, and the time for a petition for a writ of certiorari elapsed or a petition for certiorari finally denied. Griffith, 407 U.S. at 321, n.6. Accordingly, only if Petitioner's conviction was not yet final when

Crawford was decided will the rule of Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004) be automatically applied.

On May 10, 1999, the Minnesota Court of Appeals affirmed the District Court and, on July 30, 1999, the Minnesota Supreme Court denied review. It is undeniable that Petitioner's conviction was final at the time Crawford was announced.

Once a conviction has become final, it is unlikely that Crawford will be applied retroactively upon collateral review. Generally, new rules of constitutional procedural law are not applied retroactively when raised collaterally. There are two exceptions found in Teague v. Lane, 489 U.S. 288 (1989) (plurality opinion). The Teague plurality held that a new procedural rule must be applied retroactively on collateral review only where it (1) places "private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) constitutes a "watershed rule" of criminal procedure which is "implicit in the concept of ordered liberty." Teague, 489 U.S. at 311-312.

Obviously, the Crawford hearsay rule does not change what conduct the government may prohibit. Accordingly, Petitioner can only prevail if the rule of Crawford is a "watershed" rule for retroactivity purposes.

In Schriro v. Summerlin, ___ U.S. ___, 124 S. Ct. 2519; 159 L. Ed. 2d 442 (2004), the United States Supreme Court stated that the class of watershed

rules warranting retroactive application is "extremely narrow" and it is "unlikely that any (has) yet to emerge." Only two rules have ever been applied retroactively on collateral review: the right to counsel in Gideon v. Wainwright, 372 U.S. 335 (1963), and the prohibition against the admission of a non-testifying co-defendant's confession in Bruton v. United States, 391 U.S. 123 (1968)

In fact, two federal courts have held that the rule of Crawford should not retroactively apply to convictions that were already final before the Crawford decision was issued. The Tenth Circuit held that Crawford is not retroactive in Brown v. Uphoff, 381 F.3d 1219 (10th Cir. 9/08/2004):

> Whether the rule of Crawford should be retroactively applied, therefore, depends on whether it meets one of the two exceptions articulated by the Court in Teague. Clearly the first exception does not apply because Crawford does not place private conduct beyond the power of the law-making authority to proscribe. We must examine then whether Crawford set forth a "watershed rule" of criminal procedure. As we have noted before, this exception is narrowly defined. Johnson v. McKune, 288 F.3d 1187, 1197-98 (10th Cir. 2002). "To qualify as a 'watershed' rule of criminal procedure, the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." Mora, *293 F.3d at 1218-19* (quotation omitted). We conclude that the rule in Crawford does not meet this definition.

Perhaps of even more interest to the instant Petition, the Eighth Circuit Court of Appeals in *Evans v. Luebbers,* 371 F.3d 438 (8th Cir. 6-10-2004), similarly indicated that Crawford is not entitled to retroactivity.

> We are cognizant that the Supreme Court's recent decision in Crawford v. Washington, ___ U.S. ___, 124 S.Ct. 1354, ___ L.Ed.2d ___ (2004), arguably bears on this case. In Crawford, the Court overruled Ohio v. Roberts and held that "testimonial" hearsay is inadmissible against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford, ___ U.S. at ___, 124 S.Ct. at 1374. We doubt Crawford's application to the case at hand for at least to reasons. First, the Crawford Court did not suggest that this doctrine would apply retroactively and the doctrine itself does not appear to fall within either of the two narrow exceptions to *Teague v. Lane's* non-retroactivity doctrine. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *see also,* Williams v. Taylor, 529 U.S. 362, 411-13, 120 S.Ct.1495, 146 L.Ed.2d 389 (2000) (discussing Teague and AEDPA).

Moreover, in Murillo v. Frank, 316 F.Supp.2d 744 (E.D. Wis. 4/6/2004), a U.S. District Court held that Crawford does not apply to consideration of habeas corpus petitions for convictions which became final before it was decided (note, however, that the court granted the petition in Murillo for a confrontation violation under pre-existing law). The reasoning of the U.S. District Court is instructive:

> The determination of whether a rule is "old" or "new" for retroactivity purposes is not without its difficulties. Taylor, 529 U.S. at 381. According to

> Teague, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." 498 U.S. at 301. A case announces an old rule, on the other hand, if the result was dictated by precedent that existed at the time the petitioner's conviction became final. *Id.* Although a close question, I conclude that because Crawford essentially overruled Roberts, at least as it applies to testimonial statements, it's holding must be considered a new rule. I therefore conclude it does not apply and turn to the state of the law as it existed prior to Crawford.

2. CRAWFORD DOES NOT ANNOUNCE A WATERSHED RULE UNDER TEAGUE

In Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 2159 (2004), the United States Supreme Court described the Teague analysis as "giv[ing] retroactive effect only to a small set of "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. The Court has further articulated that "the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.'' (quoting Teague 489 U.S. at 313). Finally, the Court has expressed that "[t]his class of rules is extremely narrow, and 'it is unlikely that any…ha[s] yet to emerge.'" (quoting Taylor v. Cain, 533 U.S. 656, 667 n.7, 121 S.Ct. 2478 (2001)(quoting Sawyer v. Smith, 497 U.S. 227, 243, 110 S.Ct. 2822 (1990)).

Beginning with the rule at issue in Teague, the United States Supreme Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has

refused to apply the rule at issue retroactively. In the Matter of Markel, 2005 Wash. LEXIS 369 (May 5, 2005) (quoting United States v. Mandanici, 205 F.3d 519, 529 (2d Cir. 2000)).

In Brown v. Uphoff, 381 F.3d 1219 (10th Cir. 2004) (cert. denied 125 S.Ct. 940 (Jan. 10, 2005), the 10th Circuit held that Crawford is not retroactive because it does not set forth a watershed rule of criminal procedure. It was that court's conclusion that, unless a new rule was "on the magnitude of the rule announced in Gideon v. Wainright, it will not fit within the Teague watershed rule exception. The court stated:

> Unlike *Gideon*, *Crawford* does not alter our understanding of what constitutes basic due process,' but merely sets out new standards for the admission of certain kinds of hearsay. Confrontation Clause violations are subject to harmless error analysis and thus may be excused depending on the state of the evidence at trial. It would, therefore, be difficult to conclude that the rule in Crawford alters rights fundamental to due process.

Petitioner places substantial reliance upon Bockting v. Bayer, ___ F.3d ___, 2005 WL 406284, 2005 U.S. App. LEXIS 3012 (9th Cir., Feb. 22, 2005). Aside from the fact that the 9th Circuit's decision respecting retroactivity under the Teague standards is emphatically in the minority of the substantial number of courts that have ruled on the subject, there are significant factual differences that are also of note.

The Bockting case may, at first blush, appear to approximate the instant matter. The only witness to the defendant's sexual misconduct was the victim, his six-year old stepdaughter. She did not testify at trial, but her interview with a detective was admitted as key evidence. Her statements at the interview contradicted her testimony at a preliminary hearing where she claimed not to remember what happened with her father.

In the instant matter, a child of similar age was confronted by his mother after a neighbor had discovered him with his pants down, on top of a younger girl, acting in a sexual manner. When asked by his mother where he had learned such things, the boy replied that "Steve" had put his mouth on the boy's "pee-pee" and his finger in the boy's "poopie butt." Unlike the victim in Bockting, the boy gave substantially similar information to the police and in a videotaped interview at CornerHouse.

Although the boy did not testify, his sister did. She stated that she had seen "Steve" put his mouth on her brother's "pee-pee" and "private" one day in the men's room by the pool at their aunt's apartment.

The United States Supreme Court, in Crawford, specifically prohibited *testimonial* statements of absent witnesses. In the instant matter, it cannot be disputed that the statement of the boy to his mother detailing Petitioner's sexual abuse was not testimonial and, therefore, admissible under Crawford providing

that an exception to the hearsay rule applied. Moreover, the testimony of the eyewitness-sister to a second act of sexual molestation was properly received.

Accordingly, while the playing of the CornerHouse tape was undoubtedly significant to the jury's understanding of the event, it was not the only evidence of Petitioner's sexual transgressions. Accordingly, the CornerHouse evidence was not necessarily of such import that, without it, "the likelihood of an accurate conviction (would be) seriously diminished." Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 2159, 2523.

## CONCLUSION

Upon the foregoing, Respondent requests that this Court follow the vast majority of courts who have addressed the issue and rule that because Crawford v. United States is neither a new rule of law nor a watershed rule of criminal procedure of the significance of Gideon v. Wainright or Bruton v. United States, the rule of Crawford does not retroactively apply to Petitioner's claim.

DATED: May 17, 2005

Respectfully submitted,

MICHAEL A. HATCH
Minnesota Attorney General
N. Central Life Tower, Suite 1800
445 Minnesota Street
St. Paul, MN 55101-2134

AMY KLOBUCHAR
Hennepin County Attorney

s/ Michael K. Walz
By: Michael K. Walz
Assistant County Attorney
Attorney License No. 114340
Telephone: (612) 348-3115
C-2000 Government Center
Minneapolis, MN 55487

ATTORNEYS FOR RESPONDENT

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 01-2137

Stephen Danforth,
Petitioner,
vs.

David Crist, Warden of MCF-Stillwater and the Department of Corrections of the State of Minnesota,

Respondent.

# CERTIFICATION OF COMPLIANCE

I hereby certify that this Memorandum conforms to the requirements of Local Rules 7.1(c) and (e). The length of this Memorandum is 2,731 words, and was prepared using Microsoft Word 97, CG Times font face size 13. The word processing program has been applied specifically to include all text, including headings, footnotes, and quotations.

DATED: May 17, 2005

Respectfully submitted,

AMY KLOBUCHAR
Hennepin County Attorney

s/ Michael K. Walz
By: Michael K. Walz
Assistant County Attorney
Attorney License No. 114340
Telephone: (612) 348-3115
C-2000 Government Center
Minneapolis, MN 55487

ATTORNEYS FOR RESPONDENT